# 16-207(L)

## 16-259

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

E.J. BROOKS COMPANY, d/b/a TYDENBROOKS,

*Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,*

—against—

CAMBRIDGE SECURITY SEALS, BRIAN LYLE, MICHAEL GIZZARELLI,
GURMEET SINGH GROVER,

*Defendants-Counter-Claimants-Appellees-Cross-Appellants,*

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-COUNTER-DEFENDANT-APPELLANT-CROSS-APPELLEE

DANIEL GOLDMAN
KERRI ANN LAW
CLAUDIA PAK
SAM KOCH
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

*Attorneys for Plaintiff-Counter-
Defendant-Appellant-Cross-
Appellee E.J. Brooks Company,
d/b/a TydenBrooks*

JACK WALLIN, JUSTIN HAYES, FERNANDO DaROSA, RICHARD WEIGAND, JOHANNA BRIDGES, JILL NILSSON,

*Defendants-Counter-Claimants-Appellees,*

CAMBRIDGE RESOURCES, CODA RESOURCES, LTD., d/b/a CAMBRIDGE RESOURCES,

*Defendants-Appellees.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Counter-Defendant-Appellant-Cross-Appellee in this action, E.J. Brooks Company d/b/a TydenBrooks ("Tyden") makes the following disclosures:

Tyden is a non-governmental corporation.  Tyden Group Holdings Corp. is the parent corporation of E.J. Brooks Company.  No publicly-held corporation owns 10% or more of Tyden's stock.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT FOR APPEAL ................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ............................2

STATEMENT OF THE CASE ...............................................................3

SUMMARY OF ARGUMENT .................................................................9

ARGUMENT ..........................................................................11

I.     STANDARD OF REVIEW ..........................................................11

II.    NEW YORK LAW MANDATES THAT THE
COURT AWARD PREJUDGMENT INTEREST.......................................11

III.   THE DISTRICT COURT ERRED IN DENYING
TYDEN'S MOTION FOR PREJUDGMENT INTEREST .........................14

IV.   PREJUDGMENT INTEREST SHOULD
ACCRUE AS OF FEBRUARY 11, 2011 ....................................22

CONCLUSION .......................................................................26

CERTIFICATE OF COMPLIANCE....................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music & Records Inc. v. Chimeron LLC*,
517 F. App'x 3 (2d Cir. 2013) .................................................................*passim*

*Ahluwalia/Shetty v. Kidder, Peabody & Co.*,
No. 93 Civ. 1261(TPG), 1998 WL 122592
(S.D.N.Y. Mar. 18, 1998). ..........................................................................19, 21

*Baker v. Dorfman*,
239 F.3d 415 (2d Cir. 2000) .......................................................................12, 15

*Bamira v. Greenberg*,
295 A.D.2d 206 (1st Dep't 2002) ......................................................................17

*Boule v. Hutton*,
320 F. Supp. 2d 132 (S.D.N.Y. 2004) ..............................................................13

*BPP Wealth, Inc. v. Weiser Capital Mgm't.*,
623 F. App'x 7 (2d Cir. 2015) ...................................................................*passim*

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
No. 5:03 CV 0530(DEP), 2004 WL 3507329
(N.D.N.Y. Aug. 27, 2004) ...................................................................12, 16, 22

*De Long Corp. v. Morrison-Knudsen Co.*,
14 N.Y.2d 346, 200 N.E.2d 557, 251 N.Y.S.2d 657 (1964) .............................15

*Edidin v. Uptown Gallery, Inc.*,
No. 09 Civ. 7829 (DLC)(GWG), 2010 WL 2194817
(S.D.N.Y. June 1, 2010)......................................................................................23

*Federal Ins. Co. v. American Home Assurance Co.*,
639 F.3d 557 (2d Cir. 2011) ..............................................................................11

*Gussack Realty Co. v. Xerox Corp.*,
224 F.3d 85 (2d Cir. 2000) ................................................................................12

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*,
 732 F. Supp. 370 (S.D.N.Y. 1989), *aff'd,* 920 F.2d 171
 (2d Cir. 1990)...........................................................................................24

*LinkCo, Inc. v. Fujitsu, Ltd.*,
 232 F. Supp. 2d 182 (S.D.N.Y. 2002) ...............................................13

*Mallis v. Bankers Trust Co.*,
 717 F.2d 683 (2d Cir. 1983) ...............................................................15

*Marfia v. T.C. Ziraat Bankasi*,
 147 F.3d 83 (2d Cir.1998) .........................................................10 n.3

*Matsumura v. Benihana Nat. Corp.*,
 465 F. App'x 23 (2d Cir. 2012) ...........................................................11

*In re Mud King Prods., Inc.*,
 No. H-14-2316, 2015 WL 862319 (S.D. Tex. Feb. 27, 2015) ...........23

*New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
 352 F.3d 599 (2d Cir. 2003) ...............................................................12

*On-Line Techs., Inc. v. Perkin-Elmer Corp.*,
 253 F. Supp. 2d 313 (D. Conn. 2003)..................................................23

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.*,
 238 F. Supp. 2d 604 (S.D.N.Y. 2002) ................................13, 17, 23

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
 118 F.3d 955 (2d Cir. 1997) ...............................................................23

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
 891 F. Supp. 935 (S.D.N.Y.1995) ......................................13, 17, 23

*Stanford Square, LLC v. Nomura Asset Capital Corp.*,
 232 F. Supp. 2d 289 (S.D.N.Y. 2002) .................................................22

*Thomas v. iStar Fin, Inc.*,
 629 F.3d 276 (2d Cir. 2010) .......................................................10 n.3

*Trademark Research Corp. v. Maxwell Online, Inc.*,
 995 F.2d 326 (2d Cir. 1993). ...............................................................21

**Statutes**

15 U.S.C. § 1125(a) ......................................................................1

28 U.S.C. § 1291 ..........................................................................2

28 U.S.C. § 1331 ..........................................................................1

28 U.S.C. § 1338(a) ......................................................................1

28 U.S.C. § 1367 ..........................................................................1

**Other Authorities**

Fed. R. Civ. P. 59(e)..................................................................2, 3

N.Y. C.P.L.R. § 5001 ..........................................................*passim*

Restatement (Third) of Unfair Competition, § 40 (1995).......................23

## JURISDICTIONAL STATEMENT FOR APPEAL

Plaintiff-Counter-Defendant-Appellant-Cross-Appellee in this action, E.J. Brooks Company d/b/a TydenBrooks ("Tyden" or "Plaintiff-Appellant") brought this action against Defendants-Counter-Claimants-Appellees-Cross-Appellants Cambridge Security Seals ("CSS") and its employees Brian Lyle, Gurmeet Singh Grover, and Michael Gizzarelli for, *inter alia,* violations of the Lanham Act, misappropriation of Tyden's trade secrets, unfair competition, and unjust enrichment. The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arose under the Lanham Act, 15 U.S.C. § 1125(a). The parties dismissed the claims arising under the Lanham Act by stipulation dated March 27, 2015. Stipulation of Dismissal (A79-81)[1]. The district court exercised supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

A jury trial was held between April 20, 2015 and May 4, 2015 before the Honorable Loretta A. Preska, Chief United States District Judge. On May 4, 2015, the jury rendered a verdict in favor of Tyden and awarded Tyden compensatory damages on its claims of misappropriation of trade secret, unfair competition, and unjust enrichment. On May 14, 2015, the lower court entered judgment in the amount of $3,900,000.00 against CSS; $4,000.00 against Mr. Lyle;

---

[1] Citations to "A" can be found in the Joint Appendix filed with this submission.

$6,000.00 against Mr. Singh; and $6,000.00 against Mr. Gizzarelli. Judgment (A325-26).[2]

Pursuant to Fed. R. Civ. P. 59(e), on May 14, 2015, plaintiff moved for an Order amending that judgment to include prejudgment interest, which the district court denied on December 22, 2015. Notice of Plaintiff's Motion to Amend the Judgment to Include Prejudgment Interest ("Notice of Motion") (A327-28); Memorandum and Order Denying Plaintiff's Motion to Amend the Judgment to Include Prejudgment Interest ("Order") (A329-33). Tyden timely filed a notice of appeal challenging that decision on January 21, 2016. Notice of Appeal (A372). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

On April 11, 2106, Tyden entered into a settlement agreement with Brian Lyle, Gurmeet Grover Singh, and Michael Gizzarelli, which fully and finally settled this litigation against those three individuals. This appeal thus only concerns Tyden's claims against CSS for prejudgment interest.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the district court erred in failing to amend the judgment entered in favor of Tyden against CSS in the amount of $3,900,000.00 to include mandatory prejudgment interest under § 5001 of the N.Y.C.P.L.R where there was

---

[2] Although the Judgment was so-ordered on May 13, 2015, the Clerk of the Court entered the Judgment on May 14, 2015. *See* Docket Entries (A71). As the Judgment was not formally entered until May 14, 2015, Plaintiff calculates prejudgment interest using May 14, 2015 as the end date. *See infra* p. 25.

no concrete basis to believe the jury had already included interest in its award of damages.

## STATEMENT OF THE CASE

This appeal arises from the district court's denial of Tyden's request to amend the judgment to include prejudgment interest in the amount of $1,493,432.88 against CSS, pursuant to Fed. R. Civ. P. 59(e). Notice of Motion (A327-28); Order (A329-33) (Preska, J).

The case commenced on April 12, 2012. The complaint alleged, among other things, that CSS had competed unfairly and was unjustly enriched because it had misappropriated Tyden's trade secrets. The trade secrets consisted of the manufacturing processes Tyden had developed and used to produce certain plastic indicative security seals. The parties engaged in discovery and pre-trial proceedings for three years before the case was tried before a jury from April 20, 2015 to May 4, 2015.

The evidence presented at trial proved that CSS had jumped into the security seals market on an expedited basis by copying Tyden's manufacturing processes, which CSS knew were highly efficient and had been developed and tested over many years. The evidence established that soon after Tyden acquired Stoffel Seals Corporation ("Stoffel") in December of 2010, CSS formed and then lifted out almost the entirety of Stoffel's engineering staff with the express purpose

3

of competing with Tyden in a short period of time.   From the start, CSS did not

have a factory, a shop or a tool room.  Trial Transcript ("Tr.") 300:14-23 (A125).

Notwithstanding the fact that the former Stoffel engineers were housed in a

temporary office the size of a small conference room without any machinery, they

immediately began generating design drawings of manufacturing components that

were virtually identical to those utilized by Tyden.  Tr. 301:8-302:22 (A126-27).

Then, nine months later and only a couple of months after CSS actually procured a

plant, CSS put into operation its first fully-automated production line, which was

an exact duplicate of Tyden's manufacturing line.  Tr. 300:24-301:3 (A125-26);

884:6-9 (A200).

          The jury also heard evidence of the elaborate measures CSS

undertook to hide the fact that it was stealing Tyden's fully-automated processes.

CSS instructed the former Stoffel engineers to lie to Tyden about where they were

employed.  Tr. 61:5-62:4 (A82-83); 451:8-452:14 (A143-44); 469:9-12 (A147);

730:2-731:11 (A193-94); 740:5-8 (A199).  CSS put an ad in Craig's List and

instructed the engineers to respond to it so that it would appear that CSS had not

targeted them for hire.  Tr. 299:17-300:13 (A124-25); 620:12-621:20 (A153-54);

732:1-25 (A195); 737:5-11 (A198).  CSS gave the engineers anonymous emails,

such as engineering@CSS.  Tr. 616:4-619:13 (A149-52).  It instructed the

receptionist at CSS to lie to any outside callers about whether the engineers were

4

actually employed by CSS. Tr. 618:10-25 (A151). If someone were to ask for them, the receptionist was told to respond that the former Stoffel engineers did not work for CSS. (*Id.*). CSS also instructed the engineers to conduct all of their CSS business by cell phone. Tr. 331:23-332:3 (A141-42). When CSS targeted one of the Stoffel engineers, a former Stoffel engineer and CSS employee met her at a restaurant, told her to follow him in her car to an undisclosed location and refused to disclose the identity of the company or its industry until they arrived at CSS. Tr. 732:1-734:21 (A195-97).

Plaintiff established at trial that the combination of characteristics and components of its manufacturing processes was unique and not publicly known and, thus, a trade secret. Tyden's plant manager testified in detail about the evolution of each of these trade secret processes and the many different features of these processes that were custom designed by Tyden through an iterative process over many years, including, but not limited to, what was referred to as the "heartbeat" of the processes: the axle-to-axle distances of the assembly tables, the index speed and pause time of the processes, the total run time of the assembly process, and the number of seals that advance per movement. Tr. 71:23-73:6 (A84-86); 93:15-119:12 (A87-113); 123:1-127:23 (A114-18); 182:16-21 (A119). The testimony of Tyden's plant manager was bolstered by the testimony of two of Tyden's experts, who opined that CSS's manufacturing lines were direct copies of

Tyden's.  Tr. 232:5-21 (A120); 240:11-241:14 (A121-22); 258:1-23 (A123).  The

expert witnesses testified that, absent CSS's knowledge and use of Tyden's trade

secrets, CSS would have required a larger design team and taken considerably

longer to develop its manufacturing lines.  Tr. 530:2-20 (A148).

          The evidence established that the former Stoffel engineers, now CSS

employees, were under a continuing obligation to maintain the confidentiality of

Tyden's proprietary information, including its trade secrets, which included all

non-public information that might be of use to Tyden's competitors.  Tr. 463:23-

464:7 (A145-46).  Notwithstanding the confidential nature of Tyden's information,

CSS and the individual defendants used that information to develop its own

manufacturing lines.  For example, Mr. Gizzarelli and Mr. Singh, former key

employees of Tyden/Stoffel, contacted Stelron, Inc., one of Tyden's former

vendors, and requested that Stelron build the same conveyor system for CSS as

used by Tyden for its manufacturing processes.  Tr. 304:12-22 (A128); 309:11-

312:11 (A131-34).  By February 11, 2011, Mr. Singh, with Mr. Gizzarelli's

knowledge, had provided Stelron with Tyden's confidential information that

reflected the key specifications necessary – i.e., the heartbeat of the processes – to

build the Stelron conveyor system.  Tr. 317:8-322:20 (A135-40); Plaintiff's

Exhibit 54 (A265-73).  CSS went so far as to require its own vendors to sign non-

disclosure agreements because it, too, recognized the confidential nature of

Tyden's trade secret information.  Tr. 305:23-306:2 (A129-30).

   Tyden offered the testimony of a damages expert, Dr. Robert Vigil,

who has a doctorate degree in economics.  Tr. 674:23-25 (A156).  Dr. Vigil

testified that he calculated "how much would it have cost Cambridge to develop

the manufacturing processes for its first generation version of the three machines at

issue" if CSS had "not used TydenBrooks's trade secrets."  Tr. 676:18-24 (A158).

Dr. Vigil explained that he considered two components of research and

development costs in his calculation:  labor costs and capital costs.  Tr. 677:2-4

(A159).  Capital costs referred to the "materials or parts costs that you have to pay

to actually build the machines at issue."  Tr. 677:6-7 (A159).  Labor costs were

defined as "the amount that Cambridge in this case would have had to pay the

employees to do the work of designing and developing the manufacturing

processes that we're talking about."  Tr. 677:9-12 (A159).  Interest, or prejudgment

interest, was *never* mentioned by Dr. Vigil as a component of his damage

calculation.  Using fully burdened labor costs, Dr. Vigil testified that the damages

to Tyden resulting from the costs that CSS avoided by stealing Tyden's

manufacturing processes ranged from $7.8 to $16.6 million, and this range was

applicable to all of the claims.  Tr. 686:10-17 (A168).  CSS did not offer the

testimony of any damage expert at trial.

On May 4, 2015, the jury rendered a unanimous verdict in favor of Tyden. It awarded Tyden compensatory damages against CSS in the amount of $1.3MM on its claim of misappropriation of trade secret, $1.3MM on its claim for unfair competition, and $1.3MM on its claim for unjust enrichment, for a total of $3.9MM. Tr. 1098:1-1104:4 (A258-64). That award amounted to 50% of the lower range of Dr. Vigil's damage calculation. The jury also awarded compensatory damages against each of Messrs. Singh and Gizzarelli in the amount of $2,000 on its claim of misappropriation of trade secret, $2,000 on its claim for unfair competition, and $2,000 on its claim for unjust enrichment, for a total of $6,000 against each of them. *Id.* The jury awarded compensatory damages against Mr. Lyle in the amount of $2,000 on its claim for unfair competition and $2,000 on its claim for unjust enrichment, for a total of $4,000; it did not award any amount on the claim of misappropriation of trade secret. *Id.* At the request of CSS's counsel, the district court clarified with the jury that their verdict was not duplicative and that they intended for the total amount of damages to be the sum of the amounts awarded for each of the three individual claims. Tr. 1102:24-1104:4 (A262-64).

Consistent with the jury's award, the district court entered a Judgment on May 14, 2015 in the amount of $3.9MM against CSS, $4,000 against Mr. Lyle;

$6,000 against Mr. Singh; and $6,000 against Mr. Gizzarelli. Judgment (A325-26); Docket Entries (A71).

On May 14, 2015, Tyden moved for an Order amending the Judgment to include mandatory prejudgment interest from February 11, 2011 to May 14, 2015 at 9% per annum, pursuant to §§ 5001 and 5004 of the N.Y. C.P.L.R. Notice of Motion (A327-28). CSS opposed that motion, but did not dispute that New York law applies. Order at 2 (A330). On December 22, 2015, the district court denied Tyden's motion on the ground that "it [wa]s possible" that the jury had incorporated the "prejudgment time period in its award" of damages. Order at 4-5 (A332-33). Because the district court declined to award mandatory prejudgment interest, it found that it "need not address the portion of Plaintiff's motion regarding the date from which such interest would be calculated." Order at 5 (A333).

Tyden timely filed a notice of appeal challenging that decision on January 21, 2016. Notice of Appeal (A372).

## SUMMARY OF ARGUMENT

Under New York law – which all parties agree applies[3] – prejudgment interest is mandatory. N.Y. C.P.L.R. § 5001. As this Court has held, "New York

---

[3] As the district court noted, the parties do not dispute that New York State law applies. *See* Order at 2 (A330) ("Plaintiff contends, and Defendants do not dispute, that New York law applies in this instance"). Where, as here, a party

law does not afford the trial court any discretion to refuse such an award." *BPP*

*Wealth, Inc. v. Weiser Capital Mgm't.*, 623 F. App'x 7, 11 (2d Cir. 2015)

(summary order).  The only exception to this mandatory rule is where there is a

"*concrete basis* for believing that the jury has in fact" already included interest in

its award of damages.  *ABKCO Music & Records Inc. v. Chimeron LLC*, 517 F.

App'x 3, 7 (2d Cir. 2013) (summary order).

Here, there was not a single mention of prejudgment interest during

the entire trial.  Similarly, there was no reference to prejudgment interest in either

the jury instruction or on the verdict sheet.  Tr. 1041:1-1076:25 (A201-36); Jury

Verdict Form (A320-24).  The jury's verdict of $3.9MM against CSS amounted to

exactly one-half of the lower range of the damage calculations offered by Dr.

Vigil, who did not include interest in his calculation.  Under these circumstances,

there is no "concrete" basis to believe that the jury awarded such interest and thus

the district court had no discretion to refuse to enter an award of prejudgment

interest.

In addition, the district court's reliance on a single line of an admitted

"routine jury instruction" concerning how to calculate damages for trade secret

---

receives an award of damages for state law claims alone, federal courts calculate
prejudgment interest based on that state's law.  *Thomas v. iStar Fin, Inc.,* 629 F.3d
276, 280 (2d Cir. 2010); *see Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d
Cir.1998) ("federal law does not apply to the calculation of prejudgment interest on
supplemental state law claims").

misappropriation and/or unfair use was insufficient to warrant an exception to the well-established rule awarding *mandatory* prejudgment interest. Order at 4 (A332). There is absolutely no reason to conclude from that one line, which had nothing to do with interest and simply explained the nature of damages, that the jury awarded interest.

Under these circumstances, the district court's decision should be reversed.

## ARGUMENT

### I. STANDARD OF REVIEW

The Second Circuit reviews a district court's award of prejudgment interest for abuse of discretion. *Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) (citation omitted). *See also Matsumura v. Benihana Nat. Corp.*, 465 F. App'x 23, 30 (2d Cir. 2012) (internal quotation marks and citation omitted) ("Although interest awards are generally within the discretion of the district court and will not be overturned on appeal absent an abuse of that discretion, New York law requires a district court to grant prejudgment interest when a party is entitled to such interest as a matter of right.").

### II. NEW YORK LAW MANDATES THAT THE COURT AWARD PREJUDGMENT INTEREST

An award of prejudgment interest is mandatory under New York law. Specifically, N.Y. C.P.L.R. § 5001 *et seq* provides that "[i]nterest *shall* be

11

recovered upon a sum awarded because of . . . an act or omission depriving or

otherwise interfering with title to, or possession or enjoyment of, property." N.Y.

C.P.L.R. § 5001 (emphasis added). As the Second Circuit has recognized, New

York law does not permit the district court to exercise *any discretion* to refuse an

award of prejudgment interest where a party is entitled to such an award as a

matter of right. *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000)

(reversing district court's denial of prejudgment interest and explaining that

"section 5001 imposes an affirmative mandate on trial courts; they have no

discretion not to award prejudgment interest under New York law."); *BPP Wealth,*

*Inc.*, 623 F. App'x at 11 ("Where a party is entitled to interest as a matter of right,

New York law does not afford the trial court any discretion to refuse such an

award." (citation omitted)); *New England Ins. Co. v. Healthcare Underwriters*

*Mut. Ins. Co.*, 352 F.3d 599, 602-03 (2d Cir. 2003) (same).

       "'Courts applying § 5001(a) have without qualification awarded

interest as a matter of right whenever any tortious conduct causes pecuniary

damage to tangible or intangible property interests.'" *Baker v. Dorfman*, 239 F.3d

415, 425 (2d Cir. 2000) (citing *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 695 (2d

Cir. 1983)). Accordingly, prejudgment interest is mandatory where a party has

asserted successful claims of trade secret misappropriation, unfair competition,

and/or unjust enrichment. *See Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,

No. 5:03 CV 0530(DEP), 2004 WL 3507329, at *16 (N.D.N.Y. Aug. 27, 2004) (awarding mandatory prejudgment interest on plaintiff's claims of trade secret misappropriation, unfair competition, and unjust enrichment); *Boule v. Hutton*, 320 F. Supp. 2d 132, 140 (S.D.N.Y. 2004) (awarding mandatory prejudgment interest on unfair competition claim); *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 238 F. Supp. 2d 604, 612 (S.D.N.Y. 2002) (same); *LinkCo, Inc. v. Fujitsu, Ltd.*, 232 F. Supp. 2d 182, 192 (S.D.N.Y. 2002) (damages for the theft of trade secret subject to Section 5001(a)); *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 891 F. Supp. 935, 943 (S.D.N.Y.1995) (same).

The right to prejudgment interest may be extinguished only where there is a "*concrete basis* for believing that the jury has in fact" already included interest in its award of damages. *ABKCO Music & Records Inc.*, 517 F. App'x at 7 (affirming mandatory award of prejudgment interest) (emphasis added); *BPP Wealth, Inc.*, 623 F. App'x at 11 (finding no "reliable" evidence that the jury considered interest and affirming mandatory award of prejudgment interest). To fall within this exception, a court may not speculate in concluding that a jury already awarded interest in its verdict. *See id.* As a result, "[a] routine instruction that damages are intended to make a plaintiff whole, without more, does not displace a plaintiff's statutory entitlement to prejudgment interest." *ABKCO Music*

*& Records Inc.*, 517 F. App'x at 8.  This exception exists to prevent a duplicative

award.  *See BPP Wealth, Inc.*, 623 F. App'x at 11.

## III.  THE DISTRICT COURT ERRED IN DENYING TYDEN'S MOTION FOR PREJUDGMENT INTEREST

Under this well-established New York law, Tyden is legally entitled

to a mandatory award of prejudgment interest on its successful claims of trade

secret misappropriation, unfair competition, and unjust enrichment.  This is

particularly true because there is no "*concrete basis*," or, for that matter, any basis

for believing that the jury has "in fact" already included interest in its award of

damages.  *ABKCO Music & Records Inc.*, 517 F. App'x at 7.  There was not a

single mention of prejudgment interest during the entire trial, let alone a mention

of the applicable prejudgment interest rate.  Similarly, there was no reference to

prejudgment interest in either the jury instruction or on the verdict sheet.  The

jury's verdict of $3.9MM against CSS amounted to exactly one-half of the lower

range of the damage calculations offered by Dr. Vigil, who did not include interest

in his calculation.  Under these circumstances, there is no basis whatsoever – no

less a concrete basis – to believe that the jury awarded interest.

Despite the total void of any testimony or evidence concerning

prejudgment interest, the district court denied Tyden's post-judgment motion to

amend the judgment to include it.  The district court based its decision on the

following one line of the admittedly "routine" jury instructions that were given to

14

the jury: "Damages are assessed from the date of the misappropriation and/or unfair use through the date on which the verdict is given." Order at 4 (A332). Based on this one line, the district court found that "there is a clear *reason to believe* that the jury's damage award was intended to compensate Plaintiff for injuries suffered during the same time period that an award of prejudgment interest would otherwise account for, namely from 'the earliest ascertainable date the cause of action existed.'" *Id.* (citing N.Y. C.P.L.R. § 5001(b)) (emphasis added). The district court then found that because it was "*possible* that the jury [] incorporated the prejudgment time period in its award," no prejudgment interest was warranted. *Id.* (emphasis added). The district court erred.

First, the one line of the jury instructions at issue concerned solely the *nature of the damages suffered* in this case and cannot, as a matter of law, displace Tyden's statutory entitlement to prejudgment interest. As this Court has repeatedly recognized,

> CPLR 5001(a) is phrased broadly and is designed to obliterate all distinctions that may turn on the form of the action [i.e., the old distinction between actions grounded on intentional torts and on negligence], . . . the type of property involved, the nature of the encroachment upon the plaintiff's property interests, or the nature of the damages suffered.

*Dorfman*, 239 F.3d at 425 (citation omitted); *see Mallis v. Bankers Trust Co.*, 717 F.2d 683, 695 (2d Cir. 1983) (same); *De Long Corp. v. Morrison-Knudsen Co.*, 14

15

N.Y.2d 346, 349, 200 N.E.2d 557, 559, 251 N.Y.S.2d 657, 660 (1964) (same). In other words, the nature of the damages suffered and/or the jury charge concerning the nature of the damages in this case, cannot form the basis of the district court's denial of prejudgment interest under § 5001, as a matter of law.

At trial, Tyden argued (and the jury agreed) that it was entitled to the costs that CSS had avoided by stealing and using Tyden's trade secret and confidential information. In connection with this theory of damages, the jury was instructed to assess CSS' avoided costs "from the date of the misappropriation and/or unfair use through the date on which the verdict is given." Order at 4 (A332) (citing Tr. 1068 (A228)). Courts routinely award prejudgment interest in cases where the measure of damages is based on profits or losses that are measured over a period of time and, here, "CSS' avoided development costs could just as aptly be categorized as Tyden's 'losses' or CSS's 'gains.'" Memorandum and Order Denying Defendant CSS's Motion for JMOL, a New Trial, or, in the Alternative, to Amend the Judgment at 11 (A344).

For example, in *ABKCO Music & Records, Inc.*, the Second Circuit affirmed an award of prejudgment interest where the damages awarded were based on royalties that the defendant had been obligated to, but did not pay to the plaintiff over a considerable period of time. 517 F. App'x at 2 & 2 n.1. Likewise, in *Cargill, Inc.*, the district court awarded mandatory prejudgment interest on the

plaintiff's prevailing claims of trade secret misappropriation, unfair competition, and unjust enrichment where the damages awarded were based on lost sales that were calculated over time. 2014 WL 3507329, at *16. Similarly, in *Shred-It USA, Inc.*, the district court awarded prejudgment interest at the New York statutory rate on plaintiff's claim of unfair competition where the damages consisted of one year of lost revenues. 238 F. Supp. 2d at 612; *see also Softel, Inc.*, 891 F. Supp. at 943 (awarding prejudgment interest on trade secret claim where damages were awarded based on the defendants' profits over time).

Here, too, the jury was instructed to award Tyden the costs that CSS had avoided over a certain period of time, and that is all. There is no basis to infer from that instruction that the jury took into account the time value of money, i.e., prejudgment interest, in calculating its award. *Cf. Bamira v. Greenberg*, 295 A.D.2d 206, 206 (1st Dep't 2002) (concluding that the jury had undoubtedly considered the time value of money in awarding "compensatory damages [which equaled] the value of the misappropriated stock on the date of the verdict").

Second, there is no basis to conclude that the jury incorporated prejudgment interest in its award based on the one line of the jury instructions noted above. In *ABKCO Music & Records Inc.*, this Court affirmed the district court's decision to award prejudgment interest under Section 5001(a) despite plaintiff's claim that it was possible that the jury accounted for interest on

17

defendant's counterclaim based on one line in the jury charge. In that case, the district court had instructed the jury that "'[t]he purpose of awarding damages in breach of contract cases is to place the nonbreaching party in as good a position as it would have been had the contract been performed.'" *ABKCO Music & Records Inc.*, 517 F. App'x at 7 (citing the jury charge). This Court explained that the exception for a mandatory prejudgment interest award "applies only when there is a concrete basis for believing that the jury has in fact accounted not only for the plaintiff's lost assets but for use of those assets during the time between injury and recovery." *Id.* "A routine instruction that damages are intended to make a plaintiff whole, without more, does not displace a plaintiff's statutory entitlement to prejudgment interest." *Id.* at 8. Because there was "nothing in the record to suggest that the jury contemplated an award of prejudgment interest," this Court affirmed the lower court's award of prejudgment interest. *Id.*

Similarly, in *BPP Wealth, Inc.*, this Court affirmed an award of prejudgment interest, finding "there [was] no reliable indication that the jury's . . . verdict included prejudgment interest." In that case, an expert witness had stated in his report that interest was included in his damages calculation and had made a passing reference to "interest methodology" during the trial. 623 F. App'x at 11. But this Court noted that "the absence of any discussion of prejudgment interest – both in testimony *and* in the court's instructions – undercuts the possibility" that

the jury had considered interest in its award of damages. *Id.* Accordingly, this Court held that "it would be wholly speculative to conclude that the jury already awarded interest in its verdict." *Id.*

Similarly, in *Ahluwalia/Shetty v. Kidder, Peabody & Co.*, the district court awarded mandatory prejudgment interest and allowed such interest to be accumulated from 1990 rather than 1994, despite defendants' argument that the jury's damages award already took into account appreciation from 1989–1994. No. 93 Civ. 1261(TPG), 1998 WL 122592, at *3 (S.D.N.Y. Mar. 18, 1998). In that case, the district court's instruction "*allowed* the jury to consider what [plaintiffs] lost in the way of appreciation over the five-year period." *Id.* (emphasis added). But as the district court explained, because "[t]he jury instruction *permitted, but did not require*, the jury" to award appreciated damages, the jury instruction alone was not enough to prevent prejudgment interest. *Id.* at *3-4 (emphasis added). In so holding, the district court examined what damage-related information was presented to the jury at trial to deduce the jury's logic behind its $125,000 award, "consistent with the court's obligation to reconcile the verdict with the evidence and to harmonize the jury's answers." *Id.* at *4. The court found that "the only plausible interpretation" was that $125,000 constituted plaintiffs' loss in January 1990 alone without "adding any amount for interest or other appreciation" because that number was consistent with a chart shown to the

19

jury depicting that amount as the January 1990 loss. *Id.* For these reasons, the district court awarded prejudgment interest.

Like in *ABKCO Music & Records Inc*, *BPP Wealth*, and *Ahluwalia/Shetty*, there is *no* evidence in this case, let alone reliable or concrete evidence, that the jury calculated its damage award to incorporate prejudgment interest. It is undisputed that the jury heard no evidence relating to interest throughout the three-week trial. Dr. Vigil neither opined at trial – directly or indirectly – nor stated in his report that his findings concerning damages included interest (because they did not). Moreover, the district court did not mention interest to the jury while providing jury instructions; nor did the jury verdict form. Tr. 1041:1-1076:25 (A201-36); Jury Verdict Form (A320-24). Hence, there was no testimony or instruction from the court from which the jury could have discerned the need to consider the time value of money in its award.

To the contrary, the jury's award suggests that it did not incorporate prejudgment interest. As explained above, it is likely that the jury used Dr. Vigil's – the only damage expert offered by either party at trial – methodology to reach its $3.9 million verdict against CSS, especially in light of the fact that $3.9 million is exactly one-half of the low end of Dr. Vigil's $7.8 to $16.6 million damages range. Dr. Vigil explained to the jury exactly how he calculated damages – using two research and development costs, capital and labor. Tr. 677:2-25 (A159). The fact

that Dr. Vigil did not incorporate prejudgment interest into his calculation and the

strong probability that the jury adopted his methodology makes it highly unlikely –

beyond "wholly speculative" – that the jury considered prejudgment interest.  *See*

*BPP Wealth*, 623 F. App'x at 11.  *See generally*, *Ahluwalia/Shetty*, 1998 WL

122592 at *4 ("The above interpretation of the verdict gives effect to the jury's

intention, consistent with the court's obligation to reconcile the verdict with the

evidence and to harmonize the jury's answers.").

Finally, the sole case cited by the district court to support its denial of

Tyden's request for prejudgment interest is easily distinguishable.  In *Trademark*

*Research Corp. v. Maxwell Online, Inc.*, this Court affirmed the district court's

denial of prejudgment interest under § 5001 because the plaintiff's expert had

explicitly testified at trial that his opinion on damages included a computation of

interest.  *Id.*  There, the expert witness testified that he had "calculated an interest

expense," "applied an interest rate," and even denoted one of his categories of

wasted expenses as "interest."  995 F.2d 326, 342 (2d Cir. 1993).  This Court

concluded that the "submission of the interest issue to the jury precluded the court

from amending the judgment with a potentially duplicative interest award."  *Id.*

The same cannot be said of this case, where no mention of interest was made to the

jury by either a witness or the district court throughout the trial.  In short, there is

simply no basis to conclude that the jury considered interest in awarding damages to Tyden.

Accordingly, the district court was statutorily mandated to amend the judgment to award Tyden prejudgment interest and its refusal to do so should be reversed.

## IV.   PREJUDGMENT INTEREST SHOULD ACCRUE AS OF FEBRUARY 11, 2011

Because the district court did not award prejudgment interest, it did not determine the date from which such interest would be calculated.  Order at 4-5 (A332-33).  To the extent the Court reverses the district court's decision, Tyden respectfully requests that the Court fix the date from which prejudgment interest should accrue as February 11, 2011, which is the earliest ascertainable date the causes of action existed.  N.Y. C.P.L.R. § 5001(b).

Section 5001(b) provides that interest "shall be computed from the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. § 5001(b). *See, e.g.*, *Cargill, Inc.*, 2004 WL 3507329, at \*16 (awarding prejudgment interest from the date of the first sale of the infringing product); *Stanford Square, LLC v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 293-94 (S.D.N.Y. 2002) (awarding interest from "the date . . . the cause of action first accrued").  A cause of action for trade secret misappropriation exists when "(1) defendants possessed a trade secret, and (2) defendants used that trade secret in breach of an agreement,

confidence, duty, or as a result of discovery by improper means." *Softel, Inc.*, 891

F. Supp. at 944 (awarding interest from the date "upon which Plaintiff's code was

incorporated into defendants' programs"). "Even if no products have been built

embodying or using trade secrets, a trade secret is used if it has contributed to the

acceleration of the introduction of the product." *On-Line Techs., Inc. v. Perkin-

Elmer Corp.*, 253 F. Supp. 2d 313, 323 (D. Conn. 2003) (internal quotation marks

and citation omitted); *see In re Mud King Prods., Inc.*, No. H-14-2316, 2015 WL

862319, at *5 (S.D. Tex. Feb. 27, 2015) ("'Use' of a trade secret includes . . .

relying on the trade secret to assist or accelerate research or development."); 

Restatement (Third) of Unfair Competition, § 40 (1995) ("use" includes "relying

on the trade secret to assist or accelerate research or development"); *see also

Shred-It USA, Inc.*, 238 F. Supp. 2d at 612 (unfair competition claim accrues at

point defendant establishes a business "in a manner and market [the] defendant[]

knew or could reasonably have foreseen would compete with [plaintiff]"); *Edidin

v. Uptown Gallery, Inc.*, No. 09 Civ. 7829 (DLC)(GWG), 2010 WL 2194817, at *1

(S.D.N.Y. June 1, 2010) (unjust enrichment claim accrues at time defendant

benefits from receipt of money, property or other benefits).

   Here, the trade secrets at issue are the unique and state of the art

processes Tyden developed to manufacture plastic indicative seals. *Softel, Inc. v.

Dragon Med. & Scientific Commc'ns, Inc.,* 118 F.3d 955, 968 (2d Cir. 1997) (trade

secret can exist in combination of characteristics or components even where each

element is in the public domain, if the unified process combining the publicly

available characteristics and components is unique and not publicly known);

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.,* 732 F. Supp. 370,

376 (S.D.N.Y. 1989), *aff'd,* 920 F.2d 171, 174 (2d Cir. 1990) (same).  The

evidence at trial established that as of February 11, 2011, CSS, through defendants

Singh and Gizzarelli, began to use Tyden's trade secrets to its own competitive

advantage.  Specifically, on February 11, 2011, Mr. Singh relayed precise

specifications to Stelron, a third-party vendor that Tyden used, to build an

assembly table that was identical to Tyden's; CSS also executed an NDA with

Stelron on that date.  Tr. 317:8-322:20 (A135-40); Plaintiff's Exhibit 54 (A265-

73).  The dimensions of the assembly table were the foundation of the assembly

process; they dictated the size and number of machines that could be utilized in the

assembly process.  Thus, by February 11, 2011, defendants were benefiting by

avoiding significant design and research costs they would have otherwise spent in

theorizing and designing the same process from scratch.

      Because February 11, 2011 is the earliest ascertainable date the cause

of actions existed, it should be used to calculate prejudgment interest.  Using

February 11, 2011, Tyden respectfully requests this Court to award prejudgment

interest in the amount of $1,493,432.88 as follows[4]:

| | Misappropriation of Trade Secret Claim | Unfair Competition Claim | Unjust Enrichment Claim | Total Damages |
|---|---|---|---|---|
| Principal Amount | $1,300,000.00 | $1,300,000 | $1,300,000 | $3,900,000.00 |
| Prejudgment Interest at 9% from 2/11/11 to 5/14/15 | $497,810.96 | $497,810.96 | $497,810.96 | $1,493,432.88 |
| **Subtotal:** | $1,797,810.96 | $1,797,810.96 | $1,797,810.96 | $5,393,432.88 |

| **Total Prejudgment Interest to be Awarded:** | **$1,493,432.88** |
|---|---|

---

[4] The statutory rate of prejudgment interest in New York is 9% per annum. N.Y. C.P.L.R. § 5004.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff-Counter-Defendant-Appellant-Cross-Appellee Tyden respectfully requests that the Court reverse the denial of prejudgment interest pursuant to Section 5001 of the New York Civil Practice Law and Rules and order that Tyden be awarded prejudgment interest in the amount of $1,493,432.88.

Dated:   April 21, 2016
         New York, New York

                                    By:   <u>/s/ Daniel B. Goldman</u>

                                    KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Daniel B. Goldman
Kerri Ann Law
Claudia Pak
Sam Koch
1177 Avenue of the Americas
New York, New York  10036
Tel: (212) 715-9100
Fax: (212) 715-8100
dgoldman@kramerlevin.com

*Counsel for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee E.J. Brooks Company d/b/a TydenBrooks*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      The Brief for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee Tyden complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 5,818 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      The Brief for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee Tyden complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using word processing program Microsoft Word 2010, in 14-point font, Time New Roman.


Dated:   April 21, 2016
         New York, New York

                                        /s/ Daniel B. Goldman
                                         Daniel B. Goldman

# SPECIAL APPENDIX

**TABLE OF CONTENTS**

PAGE

Judgment, so-ordered May 13, 2015, entered May 14, 2015 . . . . . . . . . . .  SPA-1

Memorandum and Order, dated December 22, 2015 . . . . . . . . . . . . . . . . . .  SPA-3

SPA-1



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

E.J. BROOKS COMPANY d/b/a
TYDENBOOKS,

Plaintiff,

-against-

CAMBRIDGE SECURITY SEALS, et al.,

Defendants.
------------------------------------------------------------X

12 **CIVIL** 2937 (LAP)

**JUDGMENT**

A Jury Trial before the Honorable Loretta A. Preska, United States District Judge, having

begun on April 20, 2015, and at the conclusion of the trial, on May 4, 2015, the jury having rendered

a verdict in favor of the plaintiff E.J. Brooks Company d/b/a/ Tydenbrooks as follows:

1.    against defendant Cambridge Security Seals ("CSS") in the amount of $1,300,000.00

for defendant's misappropriation of trade secret; $1,300,000.00 for defendant's

competing unfairly; $1,300,000.00 for defendant's unjust enrichment;

2.    against defendant Brian Lyle in the amount of $2,000.00 for defendant's competing

unfairly; $2,000.00 for defendant's unjust enrichment;

3.    against defendant Gurmeet Singh Grover ("Grover Singh") in the amount of

$2,000.00 for defendant's misappropriation of trade secret; $2,000.00 for defendant's

competing unfairly; $2,000.00 for defendant's unjust enrichment; and

4.    against defendant Michael Gizzarelli in the amount of $2,000.00 for defendant's

misappropriation of trade secret; $2,000.00 for defendant's competing unfairly;

$2,000.00 for defendant's unjust enrichment, it is,

**ORDERED, ADJUDGED AND DECREED:** That the plaintiff E.J. Brooks

Company d/b/a/ Tydenbrooks have judgment as follows:

1.    against defendant Cambridge Security Seals in the total sum of $3,900,000.00;

2.    against  defendant Brian Lyle in the total sum of $4,000.00;

3.    against defendant Gurmeet Singh Grover in the total sum of $6,000.00; and

4.    against defendant Michael Gizzarelli in the total sum of $6,000.00.

**DATED:** New York, New York
        May    , 2015


**RUBY J. KRAJICK**

So Ordered:

_____
**Clerk of Court**

BY:

**U.S.D.J.**

_____
**Deputy Clerk**


**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
E.J. BROOKS COMPANY d/b/a           :    12-CV-2937 (LAP)
TYDENBROOKS                         :
                                    :
              Plaintiff,            :    MEMORANDUM & ORDER
                                    :
         v.                         :
                                    :
CAMBRIDGE SECURITY SEALS, et al.,   :
                                    :
              Defendants.           :
                                    :
------------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

         Plaintiff moves, pursuant to Fed. R. Civ. P. 59(e), to

amend the judgment in this case to include prejudgment interest

based on N.Y. C.P.L.R. § 5001.  Defendants argue that such an

award would grant Plaintiff a windfall, given that the jury's

award already accounted for the prejudgment time period.  For

the reasons set forth below, Plaintiff's motion is DENIED.


I.   BACKGROUND

         On May 4, 2015, the jury rendered a verdict in favor

of Plaintiff E.J. Brooks Company d/b/a TydenBrooks ("Tyden" or

"Plaintiff") in the amount of $3,900,000 against Defendant

Cambridge Security Seals, in the amount of $4,000 against

Defendant Brian Lyle, in the amount of $6,000 against Defendant

Gurmeet Singh Grover, and in the amount of $6,000 against

Defendant Michael Gizzarelli (collectively, "Defendants").

(Judgment, dated May 13, 2015 [dkt. no. 321].)  Plaintiff

subsequently moved to amend the judgment, pursuant to Fed. R.

Civ. P. 59(e), to include prejudgment interest beginning on

February 11, 2011 in the amount of $1,498,594.19.  (Mot. to

Amend Judgment, dated May 14, 2015 [dkt. no. 322]; Mem. of Law

in Supp. of Pl.'s Mot. to Amend, dated May 14, 2015 [dkt. no.

323] (the "Mot. to Amend"), at 3.)  Defendants oppose the

motion.  (Mem. of Law in Opp'n, dated June 11, 2015 [dkt. no.

341] ("Mem. in Opp.").)

II.  DISCUSSION

          Plaintiff contends, and Defendants do not dispute,

that New York law applies in this instance because Plaintiff

prevailed on New York State law claims.  (Mot. to Amend at 1.)

See also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir.

1998) ("[F]ederal law does not apply to the calculation of

prejudgment interest on supplemental state law claims . . . .").

          Plaintiff bases the present motion on C.P.L.R. § 5001,

a New York law which governs interest on sums awarded in certain

types of contract or property-related actions.  N.Y. C.P.L.R. §

5001(a).  Under the statute, interest is "computed from the

earliest ascertainable date the cause of action existed" and

therefore includes the time period prior to the judgment and

award by the court.  N.Y. C.P.L.R. § 5001(b).  Interest is

calculated at the statutory rate, currently nine percent per
year.  N.Y. C.P.L.R. § 5004.  Defendants contend that the
present action falls outside the scope of § 5001 and that
therefore the award of prejudgment interest is not mandatory.
(See Mem. in Opp. at 5.)  However, even if this action were
governed by § 5001, the motion for prejudgment interest would
still be denied and thus the Court does not address this issue.

        Under New York law, "'prejudgment interest is
recoverable as of right,' and should be added to the jury award
unless 'there is a possibility that the jury award already
allowed interest.'"  ABKCO Music & Records Inc. v. Chimeron LLC,
517 F. App'x 3, 7 (2d Cir. 2013) (summary order) (quoting
Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326,
342 (2d Cir. 1993)).  When the jury has already calculated its
damage award to incorporate prejudgment interest, "New York law
does not permit a duplicative judicial award."  BPP Wealth, Inc.
v. Weiser Capital Mgmt., LLC, Nos. 14-1848-CV(L), 14-1849-
CV(XAP), 2015 WL 4999524, at *2 (2d Cir. Aug. 24, 2015) (summary
order) (collecting cases).  However, when, for example, the jury
was not given instructions to factor in prejudgment interest,
this concern is not implicated.  See Uni-Rty Corp. v. Guangdong
Bldg. Fin., Inc., No. 95 Civ. 9432 (GBD), 2013 WL 150214, at *2
(S.D.N.Y. Jan. 11, 2013), aff'd, 571 F. App'x 62 (2d Cir. 2014)
(summary order); see also Gierlinger v. Gleason, 160 F.3d 858,

3

874 (2d Cir. 1998).  Further, "[a] routine instruction that damages are intended to make a plaintiff whole, without more, does not displace a plaintiff's statutory entitlement to prejudgment interest."  ABKCO, 517 F. App'x at 8.

In the instant case, the Court did issue such a routine jury instruction.  (Trial Transcript, dated May 4, 2015, at 1066 ("[C]ompensatory damages are only meant to make a plaintiff whole again . . . .").)  However, the Court also instructed the jury that "[d]amages are assessed from the date of the misappropriation and/or unfair use through the date on which the verdict is given."  (Id. at 1068.)  Therefore, there is a clear reason to believe that the jury's damage award was intended to compensate Plaintiff for injuries suffered during the same time period that an award of prejudgment interest would otherwise account for, namely from "the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. § 5001(b).

When, as here, it is possible that the jury has incorporated the prejudgment time period in its award, including in a "lump sum" jury award that does not specify whether it includes prejudgment interest, New York law precludes the award of additional prejudgment interest.  See Trademark Research Corp., 995 F.2d at 342.  Thus, even assuming that Plaintiff's motion properly falls within the scope of C.P.L.R. § 5001(a), to award Plaintiff additional interest for that prejudgment period

"under the circumstances, would constitute a windfall double recovery." ABKCO, 517 F. App'x at 8 (quoting Bamira v. Greenberg, 744 N.Y.S.2d 367, 369 (N.Y. App. Div. 2002)).

Because the Court finds that Plaintiff is not entitled to prejudgment interest, the Court need not address the portion of Plaintiff's motion regarding the date from which such interest would be calculated.

III. CONCLUSION

Plaintiff's motion to amend the judgment to include prejudgment interest [dkt. no. 322] is DENIED.

SO ORDERED.

DATED:    New York, New York
          December 22, 2015

                              _Loretta A. Preska_
                              LORETTA A. PRESKA
                              Chief U.S. District Judge